FILED

UNITED STATES DISTRICT COURT2020 DEC -4  AM 10: 26
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION   US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA

Plaintiff,

v.

Case No.  6:20-cv- 2209

REAL PROPERTY LOCATED AT
9070 MAYFAIR POINTE DRIVE,
ORLANDO, FL, 32827

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

In accordance with Rule G(2) of the Supplemental Rules for Admiralty

or Maritime Claims and Asset Forfeiture Actions, Plaintiff the United States

of America brings this complaint and alleges upon information and belief as

follows:

## NATURE OF THE ACTION

1.     This is a civil action *in rem* to forfeit to the United States of

America, pursuant to 18 U.S.C. §§ 981(a)(1)(A), (a)(1)(C), and Rule G(2), the

real property, attachments thereto, and appurtenances thereon, located at 9070

Mayfair Pointe Drive, Orlando, FL 32827 (the Defendant Property) since the

property was purchased with proceeds traceable to wire fraud, in violation of

18 U.S.C. § 1343, and involved in a money laundering transaction, in

violation of 18 U.S.C. § 1957.  The Defendant Property is thus property

constituting or derived from proceeds traceable to a violation of an offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of Title 18), and property involved in a money laundering offense, and subject to civil forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C).

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over an action commenced by the United States by virtue of 28 U.S.C. § 1345 and over an action for forfeiture by virtue of 28 U.S.C. § 1355.

3.     Venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395 because the Defendant Property is in the district.  28 U.S.C. § 1395(b).

4.     This Court has *in rem* jurisdiction over the Defendant Property pursuant to 28 U.S.C. § 1355(b)(1)(B), because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

5.     Pursuant to Rule G(3)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and 18 U.S.C. § 985(c)(2), a notice of this forfeiture, as well as a copy of the complaint will be posted on the real property and served on the owners of the real property. Thereafter, neither the issuance of a warrant *in rem* nor any other action will

be necessary for the Court to exercise *in rem* jurisdiction over the property.  18 U.S.C. § 985(c)(3).

## THE DEFENDANT *IN REM*

6.     The Defendant Property is the real property, attachments thereto, and appurtenances thereon, located at 9070 Mayfair Pointe Drive, Orlando, FL 32827.

## BASIS FOR FORFEITURE

7.     Pursuant to 18 U.S.C. § 1343, it is unlawful to "devise[] . . . any scheme or artifice to defraud," or to "obtain[] money or property . . . by means of false or fraudulent pretenses, representations, or promises," if the person "transmits or causes to be transmitted by means of wire . . . communication in interstate or foreign commerce any writings . . . or sounds . . . for the purpose of executing such scheme or artifice." *Id.*

8.     Pursuant to 18 U.S.C. § 1957(a), it is unlawful to knowingly engage or attempt to engage in a monetary transaction with proceeds of a specified unlawful activity in an amount greater than $10,000 by, through, or to a financial institution. *Id.*

9.     The Defendant Property was purchased with proceeds of a wire fraud scheme that operated in violation of 18 U.S.C. § 1343, as set forth further below.  Because the Defendant Property was purchased with proceeds

3

of a violation of 18 U.S.C. § 1343, it is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), which authorizes the United States to civilly forfeit any property that constitutes or is derived from proceeds traceable to a "specified unlawful activity," as defined in 18 U.S.C.§ 1956(c)(7). "Specified unlawful activity," is defined in 18 U.S.C. § 1956(c)(7) to include offenses listed in 18 U.S.C. § 1961(1), which includes wire fraud in violation of 18 U.S.C. § 1343.

10.     Additionally, the monetary transaction made to purchase the Defendant Property was conducted in violation of 18 U.S.C. § 1957(a) because it was knowingly conducted with more than $10,000 in funds derived from specified unlawful activity (specifically, wire fraud offenses), and, as such, it is subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

11.     As required by Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial.  Specifically, they support a reasonable belief that the government will be able to show by a preponderance of the evidence that the Defendant Property was purchased with proceeds of wire fraud.

11.     Specific details of the facts and circumstances supporting the forfeiture of the Defendant Property have been provided by Internal Revenue Service (IRS) Special Agent (SA) Brooke Gnani, who states as follows:

## FACTS

12.     At all times relevant, Brooke Gnani was employed as a SA with the IRS.

## I.     Relevant Participants

13.     Highrise Advantage, LLC is a Florida limited liability company with its business address in Orlando, Florida.  Highrise's articles of organization were filed with the State of Florida on or about February 13, 2013.  Highrise was never registered with the CFTC in any capacity.

14.     Avinash Singh is the founder, registered agent, principal member, and manager of Highrise.  At all times relevant to this case, Singh was a resident of Osceola County in the Middle District of Florida.  Singh opened at least 12 bank accounts in Highrise's name, in at least seven different financial institutions, and is the sole signatory on the bank and trading accounts in the name of Highrise.  Singh has never been registered with the CFTC in any capacity.

## II.     The Scheme to Defraud

15.     Beginning in or around February 2013 and continuing to September 2020, Singh solicited and accepted at least $57 million from at least 1,100 participants ("pool participants"), in connection with pooled

5

investments in retail foreign currency contracts ("forex") through Highrise.[1] Highrise served as a "master fund" entity in a "master-feeder" fund structure. As the "master" fund, Singh and Highrise solicited money directly from pool participants and through feeder funds to trade forex.

16.     Singh solicited some investors to invest directly in Highrise's "Master Pool." Singh solicited "Feeder Pools" for other investors. In general, a "Feeder Pool" was an entity that solicited its own investors and then invested some portion of its funds with Singh and Highrise. In advising their investors as to Singh and Highrise, the Feeder Pools sometimes would pass along information that was received from Singh about Highrise and its alleged performance in forex trading.[2] Singh and Highrise received investments from Feeder Pools who invested funds with Singh and Highrise on behalf of hundreds of victims (in addition to the over 1,000 who invested directly with

---

[1] Because Highrise solicited funds for the purpose of trading forex in pooled accounts, it acted as a commodity pool operator ("CPO") while operating a commodity pool in its own name. At no time was Highrise registered with the Commodity Futures Trading Commission as a CPO. Singh acted as an Associated Person of the CPO by soliciting participation in his respective commodity pool. Singh was not registered as an Associated Person of his CPO, Highrise.

[2] For investors who provided funds through a Feeder Pool, Singh knew that many of those investors relied upon the information that he provided about himself and his claimed intention to trade the funds in forex to earn large returns for his investors.

Highrise).

17.    In his solicitations, Singh marketed himself as a successful trader. As early as 2013, Singh claimed to be a professional trader with over 10 years of forex trading experience.  Singh told a prospective pool participant that he was a commodity trader, had several pools and investors, and falsely, that those investments were low risk and had a track record of positive gains with no loss.  As Singh knew when he made those representations, they were false. Singh did not have 10 years of forex trading experience, and he did not have a track record of positive gains with no loss.  Singh's investors relied upon Singh's false representations about himself and his success as a forex trader and provided Singh and Highrise with over $57 million to invest in forex.

18.    Singh memorialized some of his false representations in the contracts that he requested that some pool participants sign with Highrise, and Singh used those contracts to induce victims into believing his misrepresentations as to how he would use the victims' funds.  In some of those contracts, victims were falsely told by Singh that their "invested funds start to trade on FOREX on the next trading day" and that their "invested funds would be traded on FOREX only."   Singh also used those contracts to advise victims that they were required to pay to Highrise a fee of 50% of the individual pool participant's purported profit per positive trading month for

reimbursement of Highrise's ordinary administrative expenses and that investors were guaranteed not to lose any money ("In case of negative trading results no profit is paid, however no trading loss is deducted from Client's investment deposit, as covered by the Company's guarantee.").

19.     Singh instructed pool participants to write checks or wire funds directly to bank accounts in the name of Highrise, which Singh controlled, where pool participant funds were pooled and commingled.  Singh and Highrise received at least $57,224,083 to trade in forex.  Rather than trade all pool participant funds as Singh had promised, Singh ran Highrise as a Ponzi scheme by which Singh used funds from one investor to pay an amount owed to another investor.  Singh did not invest the funds that he promised to invest, but misappropriated at least $45,354,910 in the form of Ponzi payments to other investors and over $10 million in personal expenses.  Singh's personal expenses included payments for travel, car costs, professional services, retail purchases, phone bills, marketing, home and personal costs, events, dining, and other miscellaneous expenses.  In other words, Singh invested in forex less than 5% of the over $57 million that he received from his victims.

20.     In order to conceal his fraudulent scheme, to lull his victims (many of which were located outside of Florida) into a false sense of security as to the safety and profitability of their investments, and to induce other

victims to invest with him and Highrise, Singh issued monthly account statements, often via email, that falsely represented that Singh had invested the funds in forex as he had promised to do and that he was making large profits. In fact, Singh's investments, when he made them, often lost significant sums of funds, which led Singh into creating false monthly statements that falsely represented that the investments had made money, which, as Singh knew, was not true.

## III.   Purchase of Residence Subject to Forfeiture

21.   During the timeframe of the scheme, Singh's personal bank accounts received investor funds in the form of transfers from Highrise's bank accounts. One such account was Singh's personal bank account #8402 at Wells Fargo Bank. This bank account received transfers from Highrise's business bank account #8410 at Wells Fargo Bank, which received investor funds. Indeed, there were few deposits into this Highrise account that did not represent investor funds from the fraud scheme.

22.   On September 4, 2020, Singh executed a wire transfer of $920,598.65 from his personal bank account #8402 at Wells Fargo Bank to Watson Sloane PLLC in Orlando. This wire transfer represented the down payment for the Defendant Property.

23.   Records indicate that on or about September 4, 2020, Singh and

his wife, Shanaz Anisa Singh, purchased the Defendant Property for
$2,850,000. They signed a mortgage with Angel Oak Mortgage Solutions via
promissory note on September 9, 2020 for the remainder of the sales price of
$1,995,000.

24.    Both Singh and his wife have consented to the forfeiture of the
Defendant Property. *See* Composite Exhibit A, "Consents to Forfeiture"
signed by both parties.

## CONCLUSION

25.    As required by Supplemental Rule G(2)(f), the facts set forth
herein support a reasonable belief that the government will be able to meet its
burden of proof at trial. Specifically, probable cause exists to believe that the
Defendant Property was purchased with proceeds of a wire fraud scheme that
operated in violation of 18 U.S.C. § 1343, and property involved in a money

laundering offense, and is therefore subject to forfeiture pursuant to 18 U.S.C.

§§ 981(a)(1)(A) and (a)(1)(C).

Dated: December 4, 2020

Respectfully Submitted,

MARIA CHAPA LOPEZ
United States Attorney

By:

NICOLE M. ANDREJKO
Assistant United States Attorney
Florida Bar Number 0820601
400 W. Washington Street,
Suite 3100
Orlando, Florida 32801
(407) 648-7500 – telephone
(407) 648-7643 – facsimile
Email:
nicole.andrejko@usdoj.gov

11

## VERIFICATION

I, Brooke Gnani, hereby verify and declare under penalty of perjury, that I am a Special Agent with the Internal Revenue Service, and pursuant to 28 U.S.C. § 1746: (1) I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof; and (2) that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the Internal Revenue Service, as well as my investigation of this case together with other law enforcement agents. I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this __3rd__ day of December, 2020.

BROOKE GNANI
Special Agent
Internal Revenue Service

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Real property located at 9070 Mayfair Pointe Drive, Orlando, Florida 32827 |

| (b) County of Residence of First Listed Plaintiff | | County of Residence of First Listed Defendant | Orange |
|---|---|---|---|
| | *(EXCEPT IN U.S. PLAINTIFF CASES)* | | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. | |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question *(U.S. Government Not a Party)*

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☒ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C)

Brief description of cause:
property purchased with proceeds of violations of 18 U.S.C. § 1343 and involved in violations of 18 U.S.C. § 1957

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE 12/4/20

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____